## Furnace Gap Coal Co. et al. v. White.

(Decided June 26, 1934.)

W. T. DAVIS for appellants.

CHARLES N. HOBSON, W. W. RAWLINGS and A. T. W. MANNING for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing on original, and affirming on cross-appeal.

In August, 1918, John C. White and Tennessee

White, his mother, leased to Pearl White, E. S. Schell, and J. M. Gilbert certain coal lands in Clay county. The original lease provided for a royalty of 10 cents per ton on all coal mined with a minimum royalty of $450 per month. Later, however, there was a supplemental agreement whereby the minimum royalty was changed from $450 to $250 per month. After the leases were taken, the lessees organized a corporation known as the Furnace Gap Coal Company and assigned and transferred to the corporation their leases and other holdings. This corporation opened and operated a coal mine on these lease holdings and on some small tracts which it owned in fee until about July 1, 1923, when all the properties were leased to I. H. Buchanan and others, who operated them under the name of Clay County Coal Company until about January, 1926, when the latter company was placed in the hands of a receiver by the United States District Court. Shortly thereafter the court sustained a motion to discharge the receiver and to return the leased property to the Furnace Gap Coal Company. Thereafter the properties were leased to the Marcum-Horse Creek Coal Company, which operated it until the latter part of January, 1927, when it was again turned back to the corporation formed by the original lessees.

In March, 1927, the Furnace Gap Coal Company assigned and transferred to Lee Congleton the leases and properties and as a part of the consideration for the transfer and conveyances, Congleton agreed to pay the sum of $11,500, evidenced by five notes with a lien retained to secure their payment with a proviso that in default of payment of any of the notes at maturity, all the series would become due and collectible; and Congleton agreed to assume all obligations of the original lessees with respect to payment of royalties, etc., after the date of this contract. Congleton operated the mines under the name of the Mary Frances Coal Company.

On March 14, 1928, the Furnace Gap Coal Company instituted this action in equity against Lee Congleton, the Mary Frances Coal Company, John C. White, and Tennessee White, seeking to recover the balance due on the purchase-money notes executed by Congleton and for the enforcement of the lien to secure their payment. Defendants J. C. White and Tennessee White were called upon to appear and assert claim for any amounts due them for royalties assumed to be paid by Congle-

ton and the Mary Frances Coal Company under the contract with the Furnace Gap Coal Company.

Defendant J. C. White filed answer and counterclaim which he made a cross-petition against Lee Congleton and the Mary Frances Coal Company and James M. Gilbert, alleging that the latter was a proper and necessary party to the action because he was personally liable for payment of rentals provided for under the original lease referred to in the petition. In his pleading he set up certain sums alleged to be due on royalties for the years 1921-1926, inclusive, aggregating $2,003.89. He further set up payments made on royalties from and after March 15, 1927, and the amount of coal that had been mined and shipped, and alleged that there was a balance due for royalties for the latter period of $1,389.90, and further alleged that there was due as royalties on coal consumed at the power house connected with the mining plant the sum of $350. He prayed judgment of $3,892.98 with interest from May 15, 1928, and that he be adjudged a superior lien against the property of defendants as provided in the original lease.

After a mass of evidence was taken by respective parties, the court on final hearing adjudged certain amounts to be due J. C. White on royalties for various years and certain credits to which defendants were entitled, including sums representing overpayments for some of the years. In striking the balance there was a judgment in favor of White for $2,696.16, with interest on the sums adjudged due for the various years from the end of such years. Both parties, being dissatisfied with the judgment, excepted and prayed an appeal. The Furnace Gap Coal Company and James M. Gilbert are prosecuting an appeal, and John C. White is prosecuting a cross-appeal.

While, as indicated at the outset, this suit was instituted to recover on notes due from Congleton to the Furnace Gap Coal Company and to enforce the lien retained to secure their payment, it resolved itself into a suit for accounting between the Furnace Gap Coal Company and John C. White involving intricate accounts running over a number of years. It is noted somewhere in the record or in briefs that the chancellor had the case under advisement for nearly a year. He stated at the very beginning of his opinion and judg-

ment that he had no difficulty in reaching the conclusion that White was entitled to recover on his answer and counterclaim, but that he was left in a state of perplexity when he came to determine the amount of the recovery. The opinion also calls attention to the incomplete and unsatisfactory manner in which the books and accounts of the parties have been kept and that some of the books are missing. After going over hundreds of pages of pleading and evidence and about 150 pages of briefs for respective parties, we can understand the state of doubt and uncertainty in which the chancellor was left as to the balance due appellee White.

The books of the Furnace Gap Coal Company, as appears from the evidence of its officers, were boxed up and left at the mine when it ceased its operation and in some way were later removed to Cincinnati and could not be produced. Mr. White filed in evidence a statement of his accounts which he testified was taken from books purporting to have been kept by him. Copies of portions of the books are found in the record. The evidence discloses that the books are very incomplete and some of the entries were made by Mr. White and some by his son. There was also some evidence indicating erasures and changes.

Counsel for appellant maintains that there is no competent evidence to support Mr. White's claims because of the state in which the books were found and especially as to the earlier years of the account. Appellant pleads limitation as to some of the accounts prior to the year 1925 and is insisting that this plea should have been sustained; however, the conclusion we have reached eliminates all question concerning the accounts of these earlier years.

James M. Gilbert, president of the Furnace Gap Coal Company, introduced in evidence a letter which he received from John C. White dated April 29, 1925, the material part of which reads:

"I have been thinking I would get a check from you for some time so I thought I would write to you. Now Judge the 15th of next month there is $950 due me nearly four months."

Mr. White admitted writing this letter, but explained that he meant that $950 would be due on May 15, for the four months previous thereto; but his itemized state-

ment filed in evidence as well as his pleadings are at variance with this interpretation of his letter. The evidence clearly indicates that he received a check for $200 on February 17, 1925, and checks for a like amount on March 15 and April 29th, respectively, thereafter. Mr. Gilbert testified that $950 was approximately the correct amount due on May 15, 1925. Considering this letter in connection with the evidence respecting the payments made in 1925 on and prior to the date it was written, the incomplete state of the books kept by Mr. White, and the uncertainty of his evidence concerning the accounts, we are forced to the conclusion that the chancellor erred in adjudging any royalties due Mr. White prior to May 15, 1925, in excess of $950.

This conclusion eliminates the items found due appellee for the years 1922, 1923, and 1924 amounting in all to $1,948.66, and brings us to a consideration of the accounts subsequent to those years. Figuring the items for the various years as set forth in the judgment, we find the total to be $2 less than the total sum adjudged to be due appellee. This may have been due to a miscalculation in the court below or to error in copying the figures into the record. Due to the conflicting and confused state of the evidence respecting the account between appellant and appellee, it is impossible to determine with any assurance of accuracy the amount due appellee.

In actions of this character the finding of the chancellor on issues of fact is not to be given the same weight and effect as the verdict of a properly instructed jury. While the appellate court is not bound by the finding of the chancellor on such issues and will determine the facts for itself, it does give weight and deference to his opinion. Considerable doubt remains concerning some of the items involved, especially the item of $350 allowed as royalty on coal used in the operation of the plant. Argument is made that nothing should be allowed on this item unless the amount of coal mined and removed exceeded the minimum royalty, and this of course is true; however, we find evidence to indicate that royalties on the coal mined from and after April 16, 1927, and up to the 15th day of March, 1928, amounted to more than $3,000 without taking into account coal used for the operation of the plant and the item in question is based on the coal alleged to have been used during that period. The proof as to the amount of coal so

used is somewhat vague and indefinite; however, the chancellor's finding regarding this item is not without support, and from the record as a whole we are not prepared to say that the judgment with respect to other royalties due is not amply supported by the evidence. Eliminating the items for the years 1922, 1923, and 1924 from the finding, and striking a balance from there on, will show the sum due appellee to be $745.50, and a finding to that effect is sustained by the evidence.

It is further argued by counsel for appellant that the judgment is erroneous in allowing interest on any item prior to May 15, 1928, and in this they are correct, since appellee only asked interest from that date.

By supplemental decree John G. Tye was awarded recovery on a note against the Furnace Gap Coal Company and James M. Gilbert which he set up by way of an intervening petition, and the attorney for the Furnace Gap Coal Company was adjudged entitled to a fee in a sum fixed in the judgment. The correctness of the judgment as to these matters is not called in question.

Judgment reversed on original appeal, with directions to enter judgment for appellee in the sum of $745.50 with interest from May 18, 1928, and affirmed on cross-appeal.